Neil N. Olsen, OSB No. 053378
nolsen@zrlawgroup.com
Joseph W. Carlisle, OSB No. 152602
jcarlisle@zrlawgroup.com
ZUPANCIC RATHBONE LAW GROUP, P.C.
4949 Meadows Road, Suite 600
Lake Oswego, OR  97035
Telephone: 503-968-8200
Facsimile: 503-968-8017

Of Attorneys for Plaintiff
Copious Creative, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COPIOUS CREATIVE, INC.**, an Oregon corporation, | Case No.: |
| **Plaintiff**, | COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES |
| vs. | Violation of the Computer Fraud and Abuse Act (18 U.S.C. §§ 1030 et seq.); Violation of the Stored Communication Act (18 U.S.C. §§ 2701 et seq.); Violation of Oregon Uniform Trade Secrets Act (ORS 646.461 et seq.); Breach of Fiduciary Duty; Fraud; Breach of Contract; Intentional Interference |
| **PATRICK EZELL**, an individual, | |
| **Defendant**. | |
| | DEMAND FOR JURY TRIAL |

For its Complaint in this action, Copious Creative, Inc. hereby alleges as follows:

Page 1 – COMPLAINT

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

## I.    PARTIES

1.      Plaintiff Copious Creative, Inc. ("Copious" or the "company") is an Oregon corporation with its principal place of business in Multnomah County, Oregon.

2.      Defendant Patrick Ezell ("Mr. Ezell") is an individual who resides in Multnomah County, Oregon.

## II.    JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over this civil action under 28 U.S.C. § 1331 based on Copious's claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., and the Stored Communications Act, 18 U.S.C. §§ 2707 et seq., and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over Ezell, and venue is proper in this District and this Division under 28 U.S.C. § 1391(a), because Ezell is a resident of this District, he has breached and threatened to breach duties owed by him to Copious in this District, and Copious's property at issue in this civil action is believed to be in this District.

## III.    FACTS

### A.    The Company

5.      Copious is a technology firm that offers various services, including web design, digital commerce, digital strategy, software engineering, and digital design, to companies throughout the United States and internationally.

6.      Copious was formed in 2005 by Tim Haskins ("Mr. Haskins"), as its sole shareholder.  From its founding, Mr. Haskins has served as the President of Copious, and as the sole director on Copious's Board of Directors.

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

7.      In 2005, Copious hired Mr. Ezell to serve as a non-shareholder officer of the company with the title of "corporate operations officer."  In 2007, Mr. Haskins and Copious then provided Mr. Ezell with the opportunity to become a shareholder in the company.

8.      Pursuant to a subscription agreement dated January 22, 2007 (the "Subscription Agreement"), Mr. Ezell became a shareholder of Copious.  Under the Subscription Agreement, Mr. Ezell was granted 4,000 shares of Copious stock and obtained a 40% interest in the company.  Mr. Haskins retained 6,000 shares of Copious stock and maintained a 60% interest in the company.  Mr. Ezell continued to be employed by the company as a corporate operations officer, in which position he was subordinate to Mr. Haskins as the President of the company and its sole director.

**B.      The Corporate Structure of Copious**

9.      Under Section 4.1 of Copious's Bylaws (the "Bylaws"), all corporate powers of the company are to be exercised by or under the authority of the Board of Directors, and the business and affairs of the company are to be managed under the direction of the Board of Directors.

10.      Under Section 4.2 of the Bylaws, the Board of Directors is required to be comprised of at least one director and no more than 15.  From its founding through the present, Mr. Haskins has served as the sole director on Copious's Board of Directors.

11.      Under Section 4.6 of the Bylaws, a majority of the number of directors constitutes a quorum of the Board for purposes of transacting company business.

12.      Section 7 of the Bylaws provides for the Board's appointment of officers and their powers.

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

13.     Section 7.1 of the Bylaws allows the Board to appoint a President and a Secretary. Section 7.1 also allows the President to appoint other officers and agents. The Board duly appointed Mr. Haskins President of Copious and he has served in that role from the founding of the company to the present. On January 22, 2007, the Board appointed Mr. Ezell as Secretary of the company. His tenure as Secretary ceased by Board resolution upon the company's termination of his employment on February 17, 2016.

14.     Section 7.1.1 of the Bylaws provides that the President is responsible for the general operation of the company and any other duties and responsibilities prescribed by the Board. Section 7.1.1 also gives the President the power to delegate his or her authority to any other officer.

15.     Section 7.1.3 of the Bylaws provides that the role of the Secretary of the company is to record and keep the minutes of all meetings of the Board and the shareholders, and to perform any duties and responsibilities prescribed by the Board or the President.

16.     Section 7.4 of the Bylaws provides that any officer or agent appointed by the Board or the President may be removed by the Board at any time, with or without cause. Likewise, any officer or agent appointed by the President may be removed by the President at any time, with or without cause.

17.     Section 9.1 of the Bylaws allows for the issuance of shares of the company, but only if the Board first determines that the consideration for such shares is adequate.

**C.      Copious's Employee Handbook and Employment Policies; Company Property**

18.     On January 11, 2015, Copious updated its Employee Handbook, the cover of which bears a quote by Mr. Ezell, and the representation of him as the company's "CEO." Mr. Ezell played a key role in drafting the Employee Handbook and ensuring employees, including

Page 4 – COMPLAINT

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

himself, signed the acknowledgement of the Employee Handbook and adhered to the

acknowledgement and the policies set forth by the Employee Handbook.  He, though, at all times

remained subordinate to Mr. Haskins, as the company's President and sole director.

19.     On information and belief, Mr. Ezell signed or should have signed an

acknowledgment of the Employee Handbook, which stated in part that "I understand that the

policies in the Handbook apply to me."  Mr. Ezell's commitment to adhere to the policies set

forth the Employee Handbook was a condition of the company's continued employment of him.

20.     Contained within the Employee Handbook are standard provisions, such as a

notice that an employee's relationship with the company is "at-will."

21.     Also contained in the Employee Handbook are provisions regarding Employee

Privacy, File Sharing, Use of Company Property, Return of Company Property, Conflicts of

Interest, Confidentiality and Trade Secrets, and Non-Solicitation.

22.     The company's Employee Privacy provision contains:

(a)     A policy that "Employees do not have a right to privacy in their

workspaces or in any other property belonging to the Company" and that

the "Company reserves the right to search Company property at any time";

(b)     A policy on Telephone and Text Monitoring, informing employees that

the company has the right to monitor calls and texts made from or

received on company telephones; and

(c)     A policy on E-mail that informs employees that company e-mail is

intended for official company business and is the property of the company,

and prohibits employees from setting up their company e-mail to be

forwarded to or connected to other email systems without prior

permission.

23.     The File Sharing Policy informs all employees that "All files you create or receive

at work are the property of the Company, its Clients or Partners.  These files must be made

available to the Company."

24.     The Use of Company Property and Return of Company Policies state that Copious

has invested a great deal of money into company property in order for employees to be able to do

their work, that the property should be used only in the manner intended and as instructed, and

that all company property should be returned in good order.  Included in the definition of

"Company Property" are company vehicles, as well as devices, records, data, notes, reports,

proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials,

equipment, documents, and reproductions of those items developed during the employee's

employment with the Company.

25.     The Conflict of Interest Policy states that "[w]e do not allow employees to engage

in any activities or relationships that create either an actual conflict of interest or the potential for

a conflict of interest."  It further lists as examples of prohibited conflicts of interest to include (a)

"Owning an interest in a competitor, customer, vendor, or anyone else who seeks to do business

with this Company"; (b) "Using the resources of this Company for personal gain"; and (c)

"Using your position in this Company for personal gain."

26.     The Confidentiality and Trade Secrets Policy states "Information is part of what

makes this Company competitive."  It then states that employees are prohibited from disclosing

any sensitive, confidential or propriety information.  It further states that "[a]fter you leave this

Company, you are still legally prohibited from disclosing sensitive, proprietary, trade secret, or confidential information.  If you disclose such information, we will seek legal remedies."

27.     The Non-Solicitation Policy states that for a period of 24 months after termination of employment, employees are prohibited from—directly or indirectly—soliciting, inducing, recruiting or encouraging any company employees from leaving the company or otherwise taking employees of the company.

28.     As an employee, the company provided Mr. Ezell certain company property for use in the course of his employment.  This property included, but was not limited to, laptop computers, smart phones, computer peripherals, and a company car.  The company also gave Mr. Ezell access to company resources, such as bank accounts at Umpqua Bank, an American Express credit card, telephone and data services, and local and cloud-based computing resources.

**D.     Mr. Ezell's Use of Company Resources to Benefit Himself and OnTheGo Platforms, Inc., and to the Detriment of the Company**

29.     On October 13, 2013, Mr. Ezell became an "advisor" to OnTheGo Platforms, Inc. ("OTG"), a locally-based start-up tech company.  On May 9, 2014, Mr. Ezell received an option to purchase 29,296 shares of OTG.

30.     On February 9, 2015, Copious moved into new offices.  Mr. Ezell then offered OTG the "opportunity" to sublease space at Copious's offices.

31.     The terms of OTG's sublease "negotiated" by Mr. Ezell on behalf of OTG and Copious required OTG to pay Copious $500 per month.  Given the number of OTG employees occupying the subleased space, the normal market rate for the sublease at its initiation should have been not less than $2,100 per month.  Understanding the significant free rent OTG was

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

receiving, Mr. Ezell represented to Copious that in consideration for the free rent, Ezell's option to purchase OTG shares would transfer to the benefit of Copious.

32.    On October 20, 2015, Mr. Ezell communicated to OTG his desire to exercise the option to purchase shares in OTG, which was being acquired by Atheer, Inc., a large technology company based in California.  The option did not inure to the benefit of Copious as he had represented.

33.    In early November, 2015, Mr. Ezell completed the exercise of stock option rights and became a shareholder in OTG, depriving Copious of the business opportunity he had promised it.

**E.    Mr. Ezell's Failed Corporate Coup**

34.    In the fall of 2015, Mr. Haskins suffered an injury that required him to be away from the day-to-day operations of the company for a few months.  During this time, Mr. Ezell oversaw the day-to-day operations of the Company.  At all times, Mr. Haskins remained the President of the company and its sole director.

35.    During this time, Mr. Ezell, however, also sought to complete a corporate coup by which he would control Copious.  As part of that effort, Mr. Ezell attempted to reorganize the company management structure, proposed the issuance of additional corporate stock, and attempted to restrict the authority of the President.

36.    Upon full recovery from his injury on January 19, 2016, Mr. Haskins resumed his oversight of the day-to-day operations of the company.

37.    Mr. Ezell, however, continued to attempt to obstruct the ability of Mr. Haskins to manage the company and to fulfill his duties as the company's President and sole director.

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

38.     Mr. Ezell's attempts were ultimately unsuccessful as he had not sought or obtained the approval of the Board of Directors or the President.  The company and Mr. Haskins, as President and the sole director, rejected Mr. Ezell's efforts to reorganize the company, restrict the President's power and issue additional stock.

39.     Given the actions of Mr. Ezell and the strife stemming from them, the company and its shareholders, Messrs. Haskins and Ezell, began contemplating ways in which to resolve the strife, including but not limited to executing on certain provisions under the January 22, 2007 Buy-Sell Agreement entered into among the company and its shareholders.  Messrs. Haskins and Ezell both obtained personal counsel to advise them in these regards.  In fact, unknown by Copious at the time, Mr. Ezell used the company's American Express credit card to pay a retainer to the Immix Law Group to represent him relative to the Buy-Sell Agreement on February 13, 2016.  Mr. Ezell did not have authorization to use the company credit card to pay a retainer to Immix Law Group, nor did he reimburse the company for such charge.

40.     In an effort to reach some resolution, the company and Messrs. Haskins and Ezell then agreed to meet, each with their respective legal counsel, at the offices of Immix Law Group on February 17, 2016 at 1:00 pm, and so did meet from approximately 1:00 pm to 2:30 pm on that day (the "Quiet Period Meeting").

F.     **Mr. Ezell's Theft of Company Confidential Information, Trade Secrets, Employee Information, and Interference with Company Resources and Relationships**

41.     On February 17, 2016, at 12:46 pm, just 14 minutes before the Quiet Period Meeting, Mr. Ezell downloaded a backup of all of the company's computer-based data stored using it "Salesforce" application.  Salesforce is a cloud-based computer platform the company uses to manage its customer relationships, which contains large amounts of confidential

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

company information and trade secrets.  Mr. Ezell's action is evidenced by an email from

Salesforce to Mr. Ezell's company email account (patrick@copiousinc.com), which included a

link to download a backup of all of the company's Salesforce data.  This email was triggered by

an export request from Mr. Ezell.

42.     At the Quiet Period Meeting, the parties and their counsel discussed different

proposals regarding either Mr. Ezell's shares in the company being purchased, or Mr. Haskins's

shares in the company being purchased.  During these discussions, Mr. Ezell stated if he were to

be bought out, that following his departure from the company he intended to solicit the

company's employees and clients.  Mr. Ezell further stated that the effect of him being bought

out would be the funding of his efforts to compete with Copious.

43.     At 1:57 pm—while the meeting was still in progress—Mr. Ezell, using his

company-owned smart phone or laptop computer, logged into the Company's "Box.com" cloud

computer-based secure file storage account, which houses all client, company, project, and

employee documents, including large amounts of company confidential information and trade

secrets.  Box.com effectively serves as the company's document server.  At that time, Mr.Ezell

was the sole "Super Administrator" for the company's Box.com account.  Mr. Ezell's actions in

connection with Box.com are evidenced by the company's Box.com log reports.

44.     At 1:59 pm, Mr. Ezell, on his company-owned smart phone or laptop computer

and using his company email administrator privileges, then logged into the "Google Admin" for

the company's "Google App" cloud computer-based enterprise email service, which effectively

serves as the company's email server, and created an alias email address—

davidnn@copiousinc.com (the "Alias Email Account")—for the purposes of furthering his

fraudulent theft of company confidential information, trade secrets, client information, and

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

employee information.  At first glance, the Alias Email Account appears to use the email address for a newly hired company employee, David Nunez.  Mr. Nunez's email address, however, is davidn@copiousinc.com.  In an apparent effort to disguise his fraudulent efforts, Mr. Ezell added an "n" to the name used in the email address for the Alias Email Account.  Mr. Ezell's actions are evidenced by the company's Google App log reports, which reflect that "davidnn@copious.com created as a nickname of patrick@copious.com."

45.    At 2:00 pm, Mr. Ezell then created a new Box.com user under the name "David Nunnez" and using the Alias Email Account, and added the email account to multiple Box.com permission groups for the company.

46.    At 2:04 pm, Mr. Ezell made the Alias Email Account a co-owner of the company's Box.com account, granting it access to all files, users, and permissions.

47.    At 2:05 pm, Mr. Ezell accepted an invitation from Box.com for the Alias Email Account and fraudulently logged into Box.com as davidnn@copiousinc.com.

48.    At 2:25 pm, again while the Quiet Period Meeting was still in progress, Mr. Ezell cut off the company's credit facilities with American Express.  Mr. Ezell's action is evidenced by his company email account's receipt of an email from American Express to his company email account reflecting that all of the other card holders on the company's account no longer had a credit balance available to them, confirming that Mr. Ezell's instruction to American Express to effectively freeze the company's account had been successful.  He also cut off the company's access to its credit line at Umpqua Bank.

49.    At approximately 2:30 pm, Mr. Haskins, Mr. Ezell, and the company agreed to a quiet period during which they would keep the negotiations regarding any buyout quiet and confidential until the terms of the agreement were reached and finalized.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

50.     At 2:52 pm, Mr. Ezell, using his company laptop, logged into the company's Box.com account using the Alias Email Account and commenced the process of downloading at least 480 Gigabytes of company confidential information, trade secrets, client information, and employee information.

51.     At approximately 3:00 pm, after Mr. Haskins returned to the company's office, company employees told Mr. Haskins that their American Express cards no longer had an available credit balance.

52.     Soon thereafter, Mr. Ezell called senior staff members into his office, and announced that he was being the bought out.

53.     At 3:13 pm, Mr. Ezell sent an email to all employees of the company stating that Mr. Haskins was going to buy him out and that Mr. Ezell would be leaving Copious in the near future.

54.     At 3:29 and 3:30 pm, Mr. Ezell received emails at his company account from Dropbox—the cloud computer-based data storage and sharing application—confirming that he successfully changed the password to the company's Dropbox account, and had successfully changed the username from patrick@copiousinc.com to pezell@gmail.com, Mr. Ezell's "personal" email address.  Mr. Ezell continues to wrongfully retain control of the company's Dropbox account.

55.     At approximately 3:30 pm, Mr. Haskins noticed suspicious download activity occurring on Box.com.

56.     Accordingly, at 3:52 pm, Mr. Haskins, as company President, temporarily suspended Mr. Ezell's company-based Google account, changed the password, and removed Mr. Ezell's company-device access to Google Apps.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

57.     At 3:54 pm, Mr. Haskins, as company President, gained access to Mr. Ezell's company email account (patrick@copiousinc.com), upon which he discovered email notifications that exports of company data regarding specific clients were ready to download from InVision, a cloud-based computer application that the company uses for creating design prototypes for clients, collaborating among employees and clients, and managing workflow.

58.     Minutes later, Mr. Ezell entered Mr. Haskins's office and asked why his company Google account access had been removed.  Mr. Haskins stated that because he had uncovered suspicious downloads he temporarily suspended Mr. Ezell's access to his company Google account.  In response, Mr. Ezell falsely claimed that he was only downloading family photos and personal files.

59.     At approximately 4:07 pm, Mr. Haskins, as President of the company, entered Mr. Ezell's office and presented him with a resolution of the Company's Board of Directors terminating Mr. Ezell's employment and removing him as the company's Secretary.

60.     At that point, Mr. Ezell was attempting to download company data from Box.com from using a company laptop computer.  Mr. Haskins asked Mr. Ezell to cease what he was doing, to leave all of his company property, and to exit the building.

61.     Mr. Ezell refused to relinquish the company laptop computer and other company property and instead began making a scene.  During this scene, Mr. Ezell placed his company laptop computer, company smartphone, company papers and various other items in his personal bag.  He then left the building, got into his company car, and left the property.

62.     After the termination of his employment and departure from the property, Mr. Ezell cut off the company's access to its wireless telephone and data communications through Verizon Wireless.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

63.    At approximately 7:00 pm, and again at approximately 8:00 pm, 10:00 pm, and 11:00 pm on February 17, Mr. Ezell logged into Evernote, a cloud computer-based application which synchronizes various data and which contained all of the company's sales conversations as well as various project notes, certain of which constitute company confidential information and trade secrets.  Mr. Ezell's actions are evidenced by the company's Evernote log reports.

64.    At 7:35 pm, Mr. Ezell logged into a company account with Atlassian Confluence, a cloud computer-based application which is designed to allow the senior leadership at Copious to share leadership meeting notes, process and standards documentation, and have private discussions.  He then initiated a download of all content from this system, which included large amounts of company confidential information and trade secrets.  Mr. Ezell also blocked Mr. Haskins's ability to access the company's data using this application.  Mr. Ezell's actions are evidenced by the company's Atlassian Confluence log reports.

65.    On February 18, 2016, Mr. Ezell continued his unauthorized access and download of company computer-based data, including confidential information.

66.    At 2:18 am, Mr. Ezell logged into the company's Box.com account, again, using the Alias Email Account and until 8:02 pm he continued downloading company files, project files, and employee records (including I-9s and W-2s containing employee social security numbers and other sensitive private information).  This downloaded data included company confidential information and trade secrets.

67.    At 5:43 am, the company, at Mr. Ezell's former company email address, received an email from American Express that the email address linked to the account has been changed to Mr. Ezell's personal email account, pezell@gmail.com.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

68.     During this same period, Mr. Ezell continued the unauthorized access of his former company email account and forwarded dozens of emails to his personal email account. He also accessed, without authorization, the company's Google Drive account and transferred company financial, sales, and forecasting information along with client lists, estimates, and client master services agreement (MSAs) and statements of work (SOWs), which included company confidential information and trade secrets.

69.     At 12:15 am on February 19, 2016, the company discovered the Box.com downloads Mr. Ezell accomplished through the Alias Email Account, and disabled the Alias Email Account and device access.

70.     On February 19, 2016, under threats of legal action and apparently driven by his desire to obtain from the company personal passwords that he stored on a company-owned account with a cloud computer-based password storage application, Mr. Ezell returned to the company the company laptop computer he took with him upon the termination of his employment.  He also signed a vaguely worded and evasive declaration prepared by his counsel at Immix Law Group whereby he stated that he did not keep in his "possession" copies of the company's data that was stored on the laptop computer or that he, or others on his behalf, "downloaded, accessed, otherwise obtained . . . on or after February 17, 2016."  He did not return to Copious his company-owned smartphone or other electronic devices.

71.     On February 20, 2016, despite return of the company laptop computer and his self-serving declaration, Mr. Ezell, on information and belief, logged onto the company's on-line account with Glassdoor, which is internet-based application the company uses for recruitment and job postings.  On information and belief, Mr. Ezell used the email account of his wife, Patricia Ezell—triciaezell@gmail.com—to access the company's Glassdoor account.  Ms. Ezell

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

is not an employee of the company, and the company did not know Mr. Ezell's wife to be an authorized user on the account, further demonstrating Mr. Ezell's wrongful and fraudulent acts to gain access to company information.

72.     On February 24, 2016, the company received a request from Mr. Ezell's counsel at Immix Law Group inquiring whether Copious's contracts with Leatherman, IngramMicro, and NW Natural include an employee non-solicitation clause, and, if so, requesting that Copious waive those clauses.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq.)

73.     Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

74.     The Computer Fraud and Abuse Act ("CFAA") is codified at 18 U.S.C. §§ 1030 et seq.  The CFAA subjects to criminal and civil liability any person who intentionally or with fraudulent intent accesses a protected computer without authorization or in excess of authorized access, and thereby obtains a thing of value in furtherance of an object of fraud, or causes damage and/or loss.

75.     Copious's Salesforce.com, Box.com, Dropbox.com, Google, InVision, Evernote, Atlassian Confluence, Glassdoor, and email accounts are password protected computer-based programs and applications.  Copious's employees access Copious's computers and its computer system, as well as the above-referenced computer-based accounts to provide its digital content

services to Copious's customers in interstate commerce throughout the United States and across state lines, as well as to its international customers.

76.     The computers on which Copious's data, files, records and information are stored are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

77.     Prior to the termination of his employment, Mr. Ezell was not authorized by Copious to download the Company's data, files, records and information onto his personal e-mail account, personal devices, or personally-controlled cloud-based accounts.  He also was not authorized to download Copious's data, files, records and information for any use other than for legitimate business purposes related to his employment at Copious.

78.     Likewise, at the time of Mr. Ezell's improper activities following the termination of his employment, as set forth above, Mr. Ezell was not authorized to access or download the Company's data, files, records and information for any reason.

79.     Mr. Ezell was also not authorized to retain possession of Copious's data, files, records and information that he downloaded and sent to his personal e-mail account, personal devices, personally-controlled cloud-based accounts, or elsewhere.

80.     Through these actions, Mr. Ezell has:

    (a)     Knowingly and with the intent to defraud, accessed protected computers without authorization and in excess of authorization, and by means of such conduct that furthered the intended fraud and obtained a thing of value, in violation of 18 U.S.C. § 1030(a)(4);

    (b)     Intentionally and without authorization obtained Copious's data, files, records and information by accessing protected computers on which such

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR 97035
Tel: 503-968-8200 Fax: 503-968-8017

data, files, records, information and accounts were stored and recklessly

caused damage, in violation of 18 U.S.C. § 1030(a)(5)(B); and

(c)    Intentionally and without authorization obtained Copious's data, files,

records and information by accessing protected computers on which such

data, files, records, and information were stored and as a result caused

damage and loss, in violation of 18 U.S.C. § 1030(a)(5)(C).

81.    Copious has a private cause of action under the CFAA pursuant to 18 U.S.C.

§ 1030(g), which provides that "[a]ny person who suffers damage or loss by reason of a violation

of this section may maintain a civil action against the violator to obtain compensatory damages

and injunctive relief or other equitable relief" if the conduct "involves 1 of the factors set forth in

subclauses (I), (II), (III), (IV), or (V)" of Section 1030(c)(4)(A)(i).

82.    Under 18 U.S.C.  1030(a)(4)(A)(i)(I), a civil action may be maintained upon a

showing of a "loss to 1 or more persons during any 1-year period … aggregating at least $5,000

in value."

83.    Mr. Ezell violated the CFAA as specifically set forth in Part III.F. herein.

84.    Copious has suffered loss in excess of $5,000 by Mr. Ezell's actions, including

being forced to expend resources in excess of $5,000 to (a) investigate the unauthorized access

and abuse of data, files, records, information and accounts and the computers on which such

items are stored; (b) attempt to stop the unauthorized access; and (c) attempt to preserve and

protect the subject data, files, records, information, accounts and computers.

85.    As a result of Mr. Ezell's actions and violations of the CFAA, Copious has

suffered damages in an amount to be proven at trial.

Zupancic Rathbone Law Group, P.C.
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

86.    Copious requests that the Court grant temporary, preliminary and permanent injunctions against Mr. Ezell under 18 U.S.C. § 1030(g) enjoining him:

(a)    From further access of Copious's data, files, records, information and accounts and the computers on which such items are stored;

(b)    From use of company data, files, records, information and accounts he obtained from the computers on which such items are stored;

(c)    To return all company property, including, but not limited to, his company smartphone, all company electronic and computer devices, copies of all company files, records, documents and information (in any and all forms or formats, physical, electronic, digital, etc.) that are in his possession, custody or control, or that he transferred to anything or anyone in anticipation of his departure from the company or subsequent to his departure from the company;

(d)    Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents contained on his company smartphone, any other company electronic device or computer, or any device in his possession, custody, or control containing data, files, records, information accessed or downloaded from company computers or cloud computer-based accounts; and

(e)    To provide all access codes, logins, and passwords necessary for

(i) Copious to access his company smartphone and other company devices, as well as all company accounts, including email, cloud-based platforms and applications, web-based applications, software, and online financial

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

and other vendor accounts; (ii) the conduct of this action, including

discovery and trial.

87.    Copious has and will continue to suffer irreparable harm unless Mr. Ezell is so

enjoined.  Copious lacks an adequate remedy at law to protect it from this harm and to

compensate it for the damages and loss suffered and that it will continue to suffer.

## SECOND CLAIM FOR RELIEF

### (Violation of the Stored Communications Act, 18 U.S.C. §§ 2701 et seq.)

88.    Copious restates and realleges its allegations in all preceding paragraphs as if

fully set forth herein below.

89.    The Stored Communications Act ("SCA") is codified at 18 U.S.C. §§ 2701 et seq.

The SCA subjects to criminal and civil liability any person who "(1) intentionally accesses

without authorization a facility through which an electronic communication service is provided;

or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or

prevents authorized access to a wire or electronic communication while it is in electronic storage

in such system."

90.    18 U.S.C. § 2707(a) provides a private cause of action for violations of the SCA

to "any provider of electronic communication service, subscriber, or other person aggrieved by

any violation of this chapter in which the conduct constituting the violation is engaged in with a

knowing or intentional state of mind" and allows for recovery "from the person or entity . . .

which engaged in that violation such relief as may be appropriate."

91.    18 U.S.C. § 2707(b) allows an aggrieved party to obtain "(1) such preliminary and

other equitable or declaratory relief as may be appropriate; (2) damages under subsection (c); and

(3) a reasonable attorney's fee and other litigation costs reasonably incurred."

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

92.     Under 18 U.S.C. § 2707(c), a Court "may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages.  In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court."

93.     As specifically set forth in Part III.F. herein, Mr. Ezell violated the SCA by willfully and intentionally accessing without authorization a facility through which an electronic communication service is provided and/or intentionally exceeding his authorization to access that facility, thereby obtaining electronic communications while they were in electronic storage in such system.  Upon information and belief, Mr. Ezell may have also willfully and intentionally altered and/or prevented authorized access to such electronic communications.

94.     Those electronic communications were company property and belonged to Copious.

95.     As a result of Mr. Ezell's actions and violations of the SCA, Copious has suffered damages in an amount to proven at trial, and is entitled to compensatory and punitive damages.

96.     Copious requests that the Court grant temporary, preliminary, and permanent injunctions against Mr. Ezell under 18 U.S.C. § 2707(b)(1) enjoining him:

(a)     From further access of Copious's electronic communications, data, files, records, information and accounts and the computers on which such items are stored;

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

(b)    From use of company electronic communications, data, files, records, information and accounts he obtained from the computers on which such items are stored;

(c)    To return all company property, including, but not limited to, his company smartphone, all company electronic and computer devices, copies of all company files, records, documents and information (in any and all forms or formats, physical, electronic, digital, etc.) that are in his possession, custody or control, or that he transferred to anything or anyone in anticipation of his departure from the company or subsequent to his departure from the company;

(d)    Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents contained on his company smartphone, any other company electronic device or computer, or any device in his possession, custody, or control containing data, files, records, information accessed or downloaded from company computers, devices, or cloud computer-based accounts; and

(e)    To provide all access codes, logins, and passwords necessary for (i) Copious to access his company smartphone and other company devices, as well as all company accounts, including email, cloud-based platforms and applications, web-based applications, software, and online financial and other vendor accounts; (ii) the conduct of this action, including discovery and trial.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

97.     Copious has and will continue to suffer irreparable harm unless Mr. Ezell is so enjoined.  Copious lacks an adequate remedy at law to protect it from this harm and to compensate it for the damages and loss suffered and that it will continue to suffer.

## THIRD CLAIM FOR RELIEF

### (Violations of the Oregon Uniform Trade Secrets Act, ORS 646.461 et seq.)

98.     Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

99.     The Oregon Uniform Trade Secrets Act, ORS 646.461 et seq. ("UTSA"), allows a party to recover compensatory damages in the form of actual losses stemming from the misappropriation of a trade secret, and the unjust enrichment experienced by the party liable for misappropriation.  In addition, upon a showing of willful or malicious misappropriation, punitive damages may be awarded in an amount not exceeding twice any compensatory damages.

100.    The UTSA also allows for the temporary, preliminary and permanent enjoinment of actual or threatened misappropriation.

101.    The UTSA further allows the award of attorney fees and punitive damages upon a finding of willful or malicious misappropriation of a trade secret.

102.    Under the UTSA, "trade secret" is defined broadly to mean:

"Information, including a drawing, cost data, customer list, formula, pattern, compilation, program, device, method, technique or process that:

(a)     Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(b)     Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

103.   Under the UTSA, "misappropriation" is defined as:

"(a)   Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(b)   Disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret;

(c)   Disclosure or use of a trade secret of another without express or implied consent by a person who, before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake; or

(d)   Disclosure or use of a trade secret of another without express or implied consent by a person, who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was:

(A)   Derived from or through a person who had utilized improper means to acquire it;

(B)   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(C)   Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use."

104.   Under the UTSA, "improper means" is defined to include: "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy[,] or espionage through electronic or other means."

105.   Mr. Ezell violated the UTSA as specifically set forth in Part III.F. herein, by willfully and maliciously acquiring through improper means Copious's trade secret information, including, but not limited to, its customer lists and data.  That information was the subject of reasonable efforts to maintain its secrecy.  Further, Copious derives independent economic value from that information based on it not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

Zupancic Rathbone Law Group, P.C.
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

106.    The means employed by Mr. Ezell to obtain the trade secrets were improper, willful and malicious in that he made various misrepresentations, created and used the Alias Email Account, and breached his duty to maintain its secrecy and confidentiality as an officer of the company and as set forth in the Employee Handbook, in order to acquire and use that information.

107.    Mr. Ezell willfully and maliciously acquired and used that information knowing that he was doing so by improper means.

108.    As a result of Mr. Ezell's willful and malicious misappropriation of its trade secrets, Copious has suffered damages in an amount to be proven at trial, and is entitled to compensatory and punitive damages.

109.    Copious also requests that the Court grant temporary, preliminary, and permanent injunctions against Mr. Ezell under ORS 646.463 enjoining him:

(a)    From further access of Copious's trade secrets and the computers on which such items are stored;

(b)    From use of the trade secrets misappropriated;

(c)    To return all company property, including, but not limited to, his company smartphone, all company electronic and computer devices, copies of all company files, records, documents and information (in any and all forms or formats, physical, electronic, digital etc.) that are in his possession, custody or control, or that he transferred to anything or anyone in anticipation of his departure from the company or subsequent to his departure from the company;

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

      (d)     Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents relating to his misappropriation of Copious's trade secrets; and

      (e)     To provide all access codes, logins, and passwords necessary for (i) Copious to access his company smartphone and other company devices, as well as all company accounts, including email, cloud-based platforms and applications, web-based applications, software, and online financial and other vendor accounts; (ii) the conduct of this action, including discovery and trial.

110.     Copious has and will continue to suffer irreparable harm unless Mr. Ezell is so enjoined.  Copious lacks an adequate remedy at law to protect it from this harm and to compensate it for the damages and loss suffered and that it will continue to suffer from Mr. Ezell's misappropriation of its trade secrets.  In addition to the irreparable harm that will occur to Copious's ability to effectively compete in the marketplace if its trade secrets and confidential and proprietary information are used by Mr. Ezell to compete against it, or otherwise disseminated to Copious's competitors or the general public, Copious will suffer irreparable harm to its ability to maintain the secrecy and confidentiality of its trade secrets and confidential information, and thereby suffer a loss of the right to protect such information as a trade secret and as confidential.  If the misappropriated and wrongfully obtained information are not returned, Copious's ability to maintain and protect its secrecy and confidentiality will be compromised if not wholly eviscerated.

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

## FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

111.    Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

112.    Mr. Ezell, as an officer of the company, and as an employee of the company trusted with access to confidential and proprietary information, owed to Copious fiduciary duties, including, but not limited to the duties of undivided loyalty; utmost good faith; full, fair, and frank disclosure; and fair dealing.

113.    Mr. Ezell breached his fiduciary duties to Copious as specifically set forth in the above-stated allegations, and by including, but not limited to:

(a)    Misappropriating the company's opportunity to exercise an option to purchase stock in OTG;

(b)    Accessing and downloading the company's confidential and proprietary information, data, files, trade secrets, records, and accounts;

(c)    Creating the Alias Email Account in order to provide himself with unauthorized access to the company's confidential and proprietary information, data, files, trade secrets, records, and accounts;

(d)    Preparing to use confidential information and trade secrets to solicit Copious's clients, solicit the company's employees, and otherwise compete with Copious after he had separated from the company;

(e)    Contacting American Express and suspending the company's accounts and access to credit, which prevented the company from transacting business, and which otherwise distracted the company while Mr. Ezell was in the

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR 97035
Tel: 503-968-8200 Fax: 503-968-8017

process of stealing company confidential information and trade secrets and, upon information and belief, otherwise communicating with the company's employees and clients to its the detriment;

(f)     Contacting Umpqua Bank and suspending the company's access to its credit line, which prevented the company from transacting business and which otherwise distracted the company while Mr. Ezell was in the process of stealing company confidential information and trade secrets and, upon information and belief, otherwise communicating with the company's employees and clients to its detriment;

(g)     Contacting Verizon and suspending the company's access to the its wireless telephone and data services, which prevented the company from transacting business, and which otherwise distracted the company while Mr. Ezell was in the process of stealing company confidential information and trade secrets and, upon information and belief, otherwise communicating with the company's employees and clients to its detriment; and

(h)     Committing other acts, as detailed herein, to the detriment of the company.

114.    As a result of Mr. Ezell's breach of his fiduciary duty, Copious has been damaged in an amount to be proven at trial, and is entitled to compensatory and punitive damages.

/ / /

/ / /

/ / /

/ / /

/ / /

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

## FIFTH CLAIM FOR RELIEF

### (Fraud)

115.    Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

116.    Because of Mr. Ezell's status as a fiduciary of the company and his special position of trust within the company as a "Super Administrator" on certain accounts, he was at all relevant times in a special relationship with Copious, which imposed upon him a duty to disclose to Copious all material matters regarding Copious's email accounts and access rights to Copious's cloud-based computer storage accounts and systems of which he had knowledge, as well as matters regarding the maintenance of the confidentiality and security of those accounts and the trade secrets, data and information stored therein.

117.    Mr. Ezell acted as described in Part III. F. herein and failed to disclose to Copious such actions.

118.    Mr. Ezell knew of his failure to disclose his actions described in Part III. F. herein.

119.    Mr. Ezell intended to conceal his actions described in Part III. F. herein.

120.    Copious reasonably relied upon Mr. Ezell's failure to disclose his actions believing that (1) he continued to maintain his duties to Copious; (2) he maintained loyalty to Copious; and (3) he was properly executing his duties with respect to protecting the integrity, security and confidentiality of Copious's accounts, systems, trade secrets, data, files, and information.

121.    As a result of Mr. Ezell's fraudulent acts, Copious has been damaged in an amount to be proven at trial, and is entitled to compensatory and punitive damages.

Zupancic Rathbone Law Group, P.C.
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract)

122.    Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

123.    Mr. Ezell, as a Copious employee, owed certain contractual obligations to Copious as outlined in the Employee Handbook.

124.    Among those obligations was the obligation to maintain the confidentiality of Copious's trade secrets and confidential and proprietary information.

125.    Mr. Ezell was also contractually obligated to return all Company property upon the termination of his employment, including his car, computer, smartphone, other devices, files, accounts and access codes (logins, passwords, etc).

126.    Mr. Ezell breached his contractual obligations by failing to maintain the confidentiality of Copious's trade secrets and confidential and proprietary information, and by creating the Alias Email Account in order to access such trade secrets and information subsequent to the termination of his employment.

127.    Mr. Ezell has also breached his contractual obligations to Copious by failing to return all Company property following the termination of his employment.

128.    As a result of Mr. Ezell's breaches of his contractual obligations, Copious has been damaged in an amount to be proven at trial, and is entitled to injunctive relief.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference)

129.    Copious restates and realleges its allegations in all preceding paragraphs as if fully set forth herein below.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

130.    Copious has existing business relationships with American Express, Umpqua Bank, Verizon Wireless, and many clients; relationships to which Mr. Ezell was not a direct party.

131.    Mr. Ezell was aware of Copious's existing business relationship with American Express, Umpqua Bank, Verizon, and its clients.

132.    Mr. Ezell intentionally interfered with Copious's existing business relationship with American Express, Umpqua Bank and Verizon Wireless by cutting off Copious's access to its American Express credit facilities, its Umpqua Bank line of credit, and access to its wireless telephone and data communications through Verizon Wireless.

133.    Mr. Ezell intentionally interfered with Copious's existing business relationship with its clients by cutting off Copious's American Express credit facilities, its Umpqua Bank line of credit, and access to its wireless telephone and data communications through Verizon Wireless.  Without access to its bank accounts, credit facilities, and communications facilities, Copious could not communicate with its clients effectively nor perform services with them effectively at the same time that Mr. Ezell was stealing company confidential information and trade secrets, and, on information and belief, communicating with Copious's clients in an effort to compete with Copious.

134.    Mr. Ezell had no right to take such actions, and did so to disrupt the operations of Copious and its ability to function and serve its clients.

135.    Mr. Ezell's actions disrupted the operations of Copious and its ability to fully and promptly serve its clients.

136.    As a result of Mr. Ezell's intentional interference with Copious's business relationships with American Express, Umpqua Bank, Verizon Wireless, and its clients, Copious

Zupancic Rathbone Law Group, P.C.
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

has been damaged in an amount to be proven at trial, and is entitled to compensatory and

punitive damages.

## V.    DEMAND FOR JURY TRIAL

137.    Copious demands trial by jury on all appropriate claims.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Copious prays for judgment against Mr. Ezell as follows:

A.      For temporary, preliminary and permanent injunctive relief as requested herein,

including, but not limited to, enjoining Mr. Ezell:

1.      From further access of Copious's trade secrets, confidential information,

electronic communications, data, files, records, other information and

accounts and the computers on which such items are stored;

2.      From use of company trade secrets, confidential information, electronic

communications, data, files, records, other information and accounts he

obtained from the computers on which such items are stored;

3.      To return all company property, including, but not limited to, his company

smartphone, all company electronic and computer devices, copies of all

company electronic communications, data, files, records, documents and

information (in any and all forms or formats, physical, electronic, digital

etc.) that are in his possession, custody or control, or that he transferred to

anything or anyone in anticipation of his departure from the company or

subsequent to his departure from the company;

/ / /

/ / /

Zupancic Rathbone Law Group, P.C.
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017

4.        Pending discovery and final judgment in this action, from deleting or altering in anyway the data, metadata, information, files, records and documents contained on his company smartphone, any other company electronic device or computer, or any device in his possession, custody, or control containing data, files, records, information accessed or downloaded from company computers or cloud computer-based accounts;

5.        To provide all access codes, logins, and passwords necessary for (i) Copious to access his company smartphone and other company devices, as well as all company accounts, including email, cloud-based platforms and applications, web-based applications, software, and online financial and other vendor accounts; (ii) the conduct of this action, including discovery and trial; and

6.        For a period of 24 months from February 17, 2016, from directly or indirectly soliciting, inducing, recruiting, or encouraging any company employees to leave their employment with the company, or otherwise take away employees from the company, whether for the benefit of Mr. Ezell or for any other person or entity;

B.      For an award of compensatory, statutory, and punitive damages as allowed by law and in such amounts as to be proven at trial;

C.      For an award of Copious's reasonable attorney fees, expenses, costs and disbursements;

/ / /

/ / /

*Zupancic Rathbone Law Group, P.C.*
4949 Meadows Road, Ste. 600
Lake Oswego, OR 97035
Tel: 503-968-8200 Fax: 503-968-8017

D.      For an award of pre- and post-judgment interest at the legal rate; and

E.      For all such other legal and equitable relief as is appropriate.

DATED this 8th day of March, 2016.


                        ZUPANCIC RATHBONE LAW GROUP, P.C.

                         */s/ Neil N. Olsen*
                        Neil N. Olsen, OSB No. 053378
                        nolsen@zrlawgroup.com
                        Joseph W. Carlisle, OSB No. 152602
                        jcarlisle@zrlawgroup.com
                        Telephone:  503-968-8200
                        Facsimile:  503-968-8017

                        Of Attorneys for Plaintiff Copious Creative, Inc.

**Zupancic Rathbone Law Group, P.C.**
4949 Meadows Road, Ste. 600
Lake Oswego, OR  97035
Tel: 503-968-8200 Fax: 503-968-8017